1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   SINCLAIR WILLIS,                         No.  2:13-cv-01671-MCE-EFB

12                  Plaintiff,

13        v.                                  **MEMORANDUM AND ORDER**

14   COUNTY OF SACRAMENTO, a
     government entity; DAVID CUNEO,
15   individually; ADAM TEDFORD,
     individually; and DOES 1 through 20,
16   inclusive, individually, jointly, and
     severally,
17
                    Defendants.
18

19

20        This action proceeds on the First Amended Complaint ("FAC") of Sinclair Willis

21   ("Plaintiff") against Defendants County of Sacramento ("County") and Officers David

22   Cuneo and Adam Tedford (collectively "Defendants").  Plaintiff alleges Defendants

23   violated both state and federal law when Plaintiff was shot while burglarizing a coffee

24   shop.  Presently before the Court is Defendant's Motion to Dismiss the FAC for failure to

25   state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following

26   reasons, Defendant's Motion is GRANTED in part and DENIED in part.[1]

27   _____
          [1] Because oral argument would not be of material assistance, the Court ordered this matter
28   submitted on the briefs.  E.D. Cal. Local Rule 230(g).

                                              1

1

2

## BACKGROUND[2]

3      On January 27, 2012, at approximately 2:07 a.m., two Sacramento Sheriff's

4  Deputies, Defendants Tedford and Cuneo, responded to an alarm at an "It's a Grind"

5  coffee shop in Galt, California.  When Tedford and Cuneo arrived at the scene, they

6  found Plaintiff burglarizing the shop.  According to Plaintiff, surveillance video shows

7  that, as he attempted to flee, Cuneo discharged his firearm three times, striking Plaintiff

8  once in the lower back and once in the buttocks.  The third shot missed.  Plaintiff, who

9  was carrying a sledgehammer at the time, alleges that he was not close enough to

10  present a threat to Defendants and that the shooting was thus unjustified.  In post

11  incident interviews, however, Cuneo stated that he shot Plaintiff in defense of Tedford,

12  because he believed Plaintiff was about to strike Tedford with what appeared to be an

13  axe.  For his part, Tedford originally stated that he lost visual contact with Plaintiff, heard

14  shots, and then heard Officer Cuneo state, "Show me your hands," "What's in your

15  hands," and "Put it down." Tedford later clarified that he actually heard Officer Cuneo

16  yelling prior to hearing the gunshots.  FAC ¶¶ 36, 37.

17      After being shot, Plaintiff crawled out of the shop's shattered entrance door and

18  then ran approximately 50 feet away, where he went down to the ground and lay in a

19  prone position.  Officer Tedford pursued Plaintiff and, when the officer arrived next to

20  Plaintiff, kicked Plaintiff in his side/rib area, searched his pockets and handcuffed him.

21  Officer Cuneo reached Plaintiff as Officer Tedford was applying the cuffs.

22      According to Plaintiff, prior to the incident in this case, the Sheriff's Department

23  had reduced firearms training from three times a year to twice annually.  Subsequently,

24  throughout 2012, Sacramento Sheriff's Deputies were involved in twelve shootings, in

25  which eleven suspects were hit and eight were killed.  These figures represented a

26  substantial increase from the average of six shooting incidents per year over the prior

27  _____

28      [2] The following recitation of facts is taken, sometimes verbatim, from Plaintiff's FAC.  FAC, April 4, 2014, ECF No. 16.

1  ten-year period.  Plaintiff attributes the increase in shootings to the district attorney's

2  decision in 2011 to discontinue that offices' review of officer-involved shootings.  Plaintiff

3  also avers that the Sheriff's Department had approved a general order establishing a

4  Tactical Review Board to further review officer-involved shootings, but that the Board

5  was never made operational.  Other systems for review, such as the Sheriff's

6  Department's Homicide Bureau and the County's Office of the Inspector General ("OIG")

7  were purportedly not "objective" and "encouraged a culture and custom of use of deadly

8  force under unjustified circumstances without fear of negative consequences."  FAC

9  ¶¶ 57-58.  Finally, the Sacramento County Grand Jury investigated the increase in

10  shootings and determined that the Sheriff's Department did not routinely conduct

11  reviews.  The Grand Jury recommended that the OIG engage in more proactive reviews

12  going forward.

13  Plaintiff filed a claim with the County, which was later denied.  He subsequently

14  filed his instant action in state court, after which Defendants removed the case to this

15  Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441.  Defendants filed a Motion to

16  Dismiss Plaintiff's original Complaint, which was granted.  Plaintiff then filed his FAC

17  alleging federal causes of action under § 1983 and state causes of action for battery,

18  negligence, and intentional infliction of emotional distress ("IIED"), the bulk of which

19  Defendants have now timely moved to dismiss as well.

20

21  **STANDARD**

22

23  On a motion to dismiss for failure to state a claim under Federal Rule of Civil

24  Procedure 12(b)(6), all allegations of material fact must be accepted as true and

25  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

26  Co., 80 F.3d 336,337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain

27  statement of the claim showing that the pleader is entitled to relief" in order to "give the

28  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell

3

1    Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

2    47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

3    detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

4    his entitlement to relief requires more than labels and conclusions, and a formulaic

5    recitation of the elements of a cause of action will not do."  Id. (internal citations and

6    quotations omitted).  A court is not required to accept as true a "legal conclusion

7    couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)

8    (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a

9    right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles

10   Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)

11   (stating that the pleading must contain something more than "a statement of facts that

12   merely creates a suspicion [of] a legally cognizable right of action.")).

13        Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

14   assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

15   quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

16   to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

17   the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing 5 Charles

18   Alan Wright & Arthur R. Miller, supra, at § 1202).  A pleading must contain "only enough

19   facts to state a claim to relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . .

20   have not nudged their claims across the line from conceivable to plausible, their

21   complaint must be dismissed."  Id.  However, "[a] well-pleaded complaint may proceed

22   even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

23   recovery is very remote and unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

24   232, 236 (1974)).

25        A court granting a motion to dismiss a complaint must then decide whether to

26   grant leave to amend.  Leave to amend should be "freely given" where there is no

27   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

28   to the opposing party by virtue of allowance of the amendment, [or] futility of the

4

1   amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

2   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

3   be considered when deciding whether to grant leave to amend).  Not all of these factors

4   merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

5   carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

6   185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

7   "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

8   Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

9   1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

10  1989) ("Leave need not be granted where the amendment of the complaint . . .

11  constitutes an exercise in futility . . . .")).

12

13                                         **ANALYSIS**

14

15       Defendants move to dismiss Plaintiff's § 1983 excessive force claims and state

16  common law battery against Tedford for failing to intervene when Cuneo shot Plaintiff

17  and against Cuneo for failing to intervene when Tedford was kicking Plaintiff.  In

18  addition, Defendants seek dismissal of Plaintiff's claim for IIED.  Finally, Defendants

19  move to dismiss Plaintiff's Monell claim against the County.

20       **A.      Excessive Force**

21       Plaintiff seeks to hold both Tedford and Cuneo individually liable for excessive

22  force under § 1983 based on each officer's failure to intervene to prevent the other

23  officer from acting.  "Liability under section 1983 arises only upon a showing of personal

24  participation by the defendant." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  As

25  relevant here, "police officers [nonetheless] have a duty to intercede when their fellow

26  officers violate the constitutional rights of a suspect or other citizen." Cunningham v.

27  Gates, 229 F.3d 1271, 1289 (9th Cir. 2000).  However, "officers can be held liable for

28  failing to intercede only if they had an opportunity" to do so. Id.

1    Defendants seek dismissal of Plaintiff's § 1983 claim against Officer Tedford for

2    injuries sustained when he was shot by Officer Cuneo.  Def.'s Mot. to Dismiss at 4-5,

3    April 17, 2014, ECF No. 18.  The FAC alleges that Cuneo fired three shots at Plaintiff in

4    a very short period of time, the first two in rapid succession, and the third four seconds

5    later.  FAC ¶ 40.  The FAC goes on to say that "by the time defendant Cuneo had fired

6    his last shot," which did not strike Plaintiff, "Defendant Tedford was close by, if not next

7    to, defendant Cuneo." FAC ¶ 40.  According to Plaintiff, Tedford later told investigators

8    that when "Defendant CUNEO fired one or more shots toward Plaintiff," Tedford

9    "knew . . . that Plaintiff had already been shot and appeared wounded."  Plaintiff thus

10   concludes that "knowing that PLAINTIFF did not pose an immediate physical threat to

11   either officer at that time, Defendant Tedford had the opportunity and duty to intervene."

12   FAC ¶ 40.

13    Plaintiff goes too far.  That Tedford knew Plaintiff was injured does not mean that

14   he had "an opportunity to intercede."  Cunningham, 229 F.3d, 1289-90.  Indeed, Plaintiff

15   points to no authority, nor is this Court aware of any, standing for the proposition that,

16   even if an officer is in close proximity to the shooter, such a small span of time is

17   sufficient to intervene.  Cf. Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203,

18   207 n.3 (1st Cir. 1990).  Absent some facts showing that Officer Tedford actually had the

19   ability to intercede, this claim is insufficient to withstand a motion to dismiss.  See

20   Twombly, 550 U.S. at 556 n.3.

21    Defendants similarly seek dismissal of Plaintiff's excessive force claim arising out

22   Officer Cuneo's failure to stop Tedford from kicking Plaintiff.  Mot. to Dismiss at 6.

23   Again, taking all allegations in Plaintiff's FAC as true, Cuneo had no opportunity to

24   intercede in the actions of his fellow officer.  The FAC alleges that Tedford "made

25   contact with plaintiff" and then kicked him while he was lying face down, having been

26   shot twice.  FAC ¶ 29.  Tedford "then rolled Plaintiff over and went through Plaintiff's

27   pockets," where he found some cash.  FAC ¶ 30.  Tedford rolled Plaintiff back onto his

28   chest and handcuffed him.  FAC ¶ 30.  Only then did Cuneo arrive at Tedford and

1    Plaintiff's location.  FAC ¶ 30.  Since Cuneo was not present when Tedford kicked

2    Plaintiff, and therefore had no "opportunity to intercede," this claim is dismissed as well.

3    See Cunningham, 229 F.3d, 1289-90.  Plaintiff will, however, be afforded leave to

4    amend.

5            **B.      Battery**

6            Defendants seek dismissal of Plaintiff's battery claim to the extent, as above, that

7    he attempts to hold Tedford liable for the shooting and Cuneo liable for Plaintiff being

8    kicked.  A person commits battery if he acts with intent to cause harmful or offensive

9    contact, or apprehension thereof, and the contact occurs.  Garcia v. United States, 826

10   F.2d 806, 810 (9th Cir. 1987).  When the defendant is a police officer acting within the

11   scope of his or her duties, a plaintiff "must prove unreasonable force as an element of

12   the tort."  Edson v. City of Anaheim, 74 Cal. Rptr. 2d 614, 616 (1998).  Plaintiff provides

13   no argument opposing dismissal of these claims.  Regardless, since liability for battery

14   must be predicated on a defendant's actual contact with the plaintiff, neither officer can

15   be held liable for the other's conduct.  Moreover, Plaintiff's conclusory allegation that the

16   officers "ratified each other's conduct" is insufficient to withstand the instant motion.  FAC

17   ¶ 107.  Defendant's motion to dismiss Plaintiff's claim of battery is GRANTED with leave

18   to amend.

19           **C.      IIED**

20           The elements of an IIED claim are: "(1) defendant's outrageous conduct;

21   (2) defendant's intention to cause, or reckless disregard of the probability of causing,

22   emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and

23   (4) an actual and proximate causal link between the tortious (outrageous) conduct and

24   the emotional distress."  McKenna v. Permanente Med. Grp., Inc., 894 F. Supp. 2d 1258,

25   1272 (E.D. Cal. 2012).  Here, Defendant challenges the first element, contending that

26   none of the alleged actions by Cuneo or Tedford are sufficiently outrageous to maintain

27   a claim for IIED.  Mot. to Dismiss at 7-8.  For conduct to be considered outrageous, it

28   "must be so extreme as to exceed all bounds of that usually tolerated in a civilized

1   community.  Conduct is extreme and outrageous when it is . . . calculated to cause, and

2   does cause, mental distress. Liability does not extend to mere insults, indignities,

3   threats, annoyances, petty oppressions, or other trivialities."  McKenna, 894 at 1273.

4   "[I]f reasonable persons may differ, it is for the jury to determine whether the conduct

5   was, in fact, outrageous." Berkley v. Dowds, 152, 61 Cal.Rptr.3d 304 (2007).

6        In cases where a claim of IIED is married to a claim of excessive force, Courts

7   have deferred dismissal of the IIED claim when the excessive force claim has yet to be

8   decided.  See, e.g. Dillman v. Tuolumne Cnty., 1:13-CV-00404 LJO, 2013 WL 1907379

9   (E.D. Cal. May 7, 2013); C.B. v. Sonora Sch. Dist., 691 F. Supp. 2d 1170, 1186 (E.D.

10  Cal. 2010).  After all, "the right to make an arrest or investigatory stop necessarily carries

11  with it the right to use some degree of physical coercion." Graham v. Connor, 490 U.S.

12  386, 396 (U.S. 1989).  Consequently, "[w]here law enforcement officers' use of force is

13  reasonable, such cannot constitute outrageous conduct."  Dillman, 1:13-CV-00404 LJO,

14  2013 WL 1907379 at 22.  Accordingly, to the extent Plaintiff's excessive force claims

15  survive (i.e., the claims against Cuneo for shooting Plaintiff and the claim against

16  Tedford for kicking Plaintiff), so do his IIED claims.  However, to the extent Plaintiff's

17  IIED claims are directed at each officer's failure to intervene to prevent the other from

18  acting, they are dismissed.  As alleged in the FAC, neither officer's failure to intervene

19  without any opportunity to do so can rise to the level of extreme and outrageous

20  conduct.

21        **D.      Monell Claim Against County**

22        Finally, Defendants move to dismiss Plaintiff's Monell claim against the County.

23  According to Plaintiff, the County is liable for failing to properly investigate shootings or

24  train its officers and for ratifying its officers' purportedly unlawful conduct in Plaintiff's

25  case.

26        It is well known that municipalities cannot be held vicariously liable for alleged

27  deprivations of constitutional rights by their employees.  Monell v. Dep't of Soc. Servs. of

28  City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978).

1   "Plaintiffs who seek to impose liability on local governments under § 1983 must prove

2   that action pursuant to official municipal policy caused their injury."  Connick v.

3   Thompson, 131 S. Ct. 1350, 1359 (2011).

4          Plaintiff alleges a correlation between an abnormally high number of officer-

5   involved shootings and deaths, and the abolishment of district attorney review of officer-

6   involved homicides, the failure of the Tactical Review Board, and the reduction in police

7   officer firearm training, which included training on the application of deadly force.  FAC

8   ¶¶ 44, 46, 51, 52.  Whether there is a significant relationship between these alleged

9   omissions by Defendants and the shooting of Plaintiff is a well-pled question of fact.  The

10   Court cannot say for purposes of a 12(b)(6) motion that, given the cutbacks in both

11   training and investigations, Plaintiff has "not nudged [his] claims across the line from

12   conceivable to plausible."  Accordingly, Defendant's motion to dismiss Plaintiff's § 1983

13   Monell claim on these theories is DENIED.

14          Plaintiff's additional claim that the County, through its policymakers, "tolerated,

15   encouraged, and condoned" the alleged misconduct of officers Cuneo and Tedford, and

16   therefore ratified their conduct, is nonetheless dismissed.  FAC ¶¶ 92, 93.  "A

17   policymaker's knowledge of an unconstitutional act does not, by itself, constitute

18   ratification."  Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999).  Although Plaintiff

19   generally contends that County policymakers turned a blind eye to Defendants' conduct,

20   he does not allege any facts explaining how they did so.  FAC ¶ 93.  Furthermore, "a

21   policymaker's mere refusal to overrule a subordinate's completed act does not

22   constitute" the approval necessary for ratification.  Christie, 176 F.3d at 1239.  Thus, the

23   motion to dismiss is GRANTED insofar as it relates to allegations that the County ratified

24   Officer Tedford and Cuneo's conduct.  Again, however, leave to amend will be permitted.

25   ///

26   ///

27   ///

28   ///

**CONCLUSION**

As set forth above, Defendants' Motion to Dismiss (ECF No. 18) is GRANTED with leave to amend in part and DENIED in part. Plaintiff may, but is not required to, file an amended complaint.  If no amended complaint is filed within twenty (20) days of the date of this Order is electronically filed, the causes of action dismissed by this Order shall be dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated:  September 3, 2014

_____
MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT