UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SINCLAIR WILLIS,

Plaintiff,

v.

COUNTY OF SACRAMENTO, a government entity; SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, a government entity; SCOTT R. JONES, individually and in his official capacity as SACRAMENTO COUNTY SHERIFF; DAVID CUNEO, individually; ADAM TEDFORD, individually; and DOES 1 through 20, inclusive, individually, jointly, and severally,

Defendants.

No. 2:13-cv-01671-MCE-EFB

**MEMORANDUM AND ORDER**

Sinclair Willis ("Plaintiff") initiated this action against Defendants County of Sacramento ("County"), Sacramento County Sheriff's Department ("Sheriff's Department"), Sheriff Scott Jones, and Officers David Cuneo and Adam Tedford (collectively "Defendants") seeking to recover for injuries Plaintiff suffered when he was shot during the course of a burglary. Plaintiff alleges violations of both state and federal law, and, over the course of the parties' motion practice, the Court previously granted in part and denied in part multiple motions to dismiss filed by Defendants. ECF Nos. 15,

22. Presently before the Court is Defendants' subsequent Motion for Summary Judgment directed at all but one remaining claim. ECF No. 31. For the following reasons, that Motion is GRANTED in its entirety.[1]

**BACKGROUND**[2]

On January 27, 2012, at just after two o'clock in the morning, three Sheriff's Department Deputies, Defendants Tedford and Cuneo and a non-defendant deputy, responded to an alarm at an "It's a Grind" coffee shop in Galt, California. When Tedford and Cuneo arrived at the scene, they found Plaintiff burglarizing the store.[3] Plaintiff had utilized a 16-pound sledgehammer to smash his way through the glass front entrance, and Plaintiff still had the sledgehammer in his possession when he saw that officers had surrounded his car. When Plaintiff realized that law enforcement had arrived, he ran to the back of the store, looking for an exit. According to Plaintiff, he also wanted to get rid of the sledgehammer because he did not want the officers to think he intended to harm them. Having no luck finding a rear exit, Plaintiff ran back to the front of the store, leaned the sledgehammer against the counter and ducked down behind it.

Cuneo approached the front of the shop and, when he shined his flashlight through the store window, saw Plaintiff duck behind the counter inside. The officers

[1] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

[2] This case is somewhat unusual as far as deadly force cases go because the material facts are undisputed. In fact, Plaintiff's opposition restates Defendants' factual recitation almost verbatim. In addition, the events immediately surrounding Plaintiff's shooting were captured on surveillance video submitted to the Court for review, and Plaintiff survived and is able to testify on his own behalf. Perhaps it is the existence of the video itself that has ensured the parties' stories align, since regardless of the parties' positions the Court would be required to "view[] the facts in the light depicted by the videotape." Scott v. Harris, 550 U.S. 372, 380-81 (2007). That said, the Court is cognizant that Plaintiff does purport to dispute a handful of facts set forth in Defendant's Separate Statement of Undisputed Facts. See ECF No. 34-3 (Fact Nos. 8-9, 11, 14). Careful review the record makes clear, however, that there is no actual factual dispute. To the extent Plaintiff attempts to create such a dispute by arguing that it was unreasonable to think he posed a threat to Officer Tedford, Fact No. 11, that argument will be addressed in the analysis below.

[3] Plaintiff also had an accomplice who is not a party to this action.

announced over the radio that a burglary was in progress and entered the store to apprehend Plaintiff. Since it was dark inside the building, the officers used their flashlights to navigate down the customer side of the shop's L-shaped counter. The short side of the "L" faced the front door, and the officers made their way to the back of the long side toward an opening in the counter that allowed access to the employee section. In the meantime, Plaintiff had also headed toward the back of the store on the opposite side of the counter. As the deputies made their way around the counter, however, Plaintiff quickly switched course and darted back in the opposite direction, running down the employee side of the counter toward the front of the store.

Deputy Cuneo followed Plaintiff down the employee side, while Deputy Tedford ran back toward Plaintiff on the customer side. Still running, Plaintiff grabbed the handle of the sledgehammer from where he had left it leaning against the counter, and hopped the counter toward the front exit. Cuneo saw Plaintiff jump onto the counter holding in his right hand in the manner he would if he was going to swing it what the officer thought was an axe. Plaintiff does not dispute this version of events, but emphasizes that he did not make any swinging or turning movements at any time. Cuneo believed that Tedford, who was still running down the customer side of the counter with only his flashlight for illumination, was about to intercept Plaintiff at the front of the store and that Tedford did not know Plaintiff was armed, so Cuneo shot Plaintiff. Officer Cuneo fired his weapon three times, hitting Plaintiff with the first two shots and missing on the third.

According to Plaintiff, he dropped the sledgehammer during the course of his attempted escape when he was still standing on top of the counter and then he felt the first shot in his hip. It is undisputed that Plaintiff dropped the hammer near where he hit the ground on the other side of the counter. Plaintiff landed on all fours and felt the second shot in his lower back when he was located approximately two feet from the broken storefront. Cuneo's third shot missed Plaintiff, who, although hit twice, had by then managed to crawl through the shattered glass at the front of the store. Less than twenty seconds had elapsed from the time the officers entered the coffee shop until

Plaintiff jumped the counter and was shot, and it took only two seconds for Plaintiff to hop the counter and exit the building.

Once outside, Plaintiff ran another 50 to 100 feet before he claims he gave up and voluntarily went to the ground. According to Plaintiff, Officer Tedford then kicked him in the ribs. Officer Tedford, on the other hand, contends that he caught Plaintiff and pushed him to the ground, but never kicked Plaintiff. Plaintiff was thereafter arrested and treated for two weeks at Kaiser Hospital before being discharged and booked into the County Jail, where he received additional medical care. As a result of his injuries, Plaintiff filed a claim with the County, pursuant to the California Tort Claims Act, California Government Code section 905, which was later denied. That claim made no reference to being kicked by Deputy Tedford.

Plaintiff subsequently filed his instant suit in state court, alleging causes of action under both state and federal law for: violation of his federal civil rights pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985; violation of his state civil rights pursuant to Cal. Civ. Code §§ 52.1 and 51.7; as well as state common law claims for battery, negligence, intentional infliction of emotional distress, and negligent hiring, supervision and retention.

After removing the case to federal court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441, Defendants filed two separate motions to dismiss, which both alleged that Plaintiff had failed to state various cognizable claims. Those motions were granted in part and denied in part, leaving the following claims for adjudication through the Motion for Summary Judgment now before the Court: (1) a § 1983 excessive force claim against Cuneo and a Monell-type claim against the County for the shooting; (2) a battery claim against Cuneo and the County (vicariously) for the shooting; (3) an intentional infliction of emotional distress ("IIED") claim against Cuneo and the County (vicariously) for the shooting; (4) a § 1983 claim against Tedford for allegedly kicking Plaintiff; (5) a battery claim against Tedford and the County (vicariously) for the kick; (6) an IIED claim against Tedford and the County (vicariously) for the kick; and (7) a § 1983 Monell-type claim against the County, also for the kick. Defendants now move for summary

judgment as to each cause of action except the § 1983 claim against Tedford. That motion is GRANTED.

**STANDARD**

The Federal Rules of Civil Procedure[4] provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 323-24.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378–79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); see also State of Cal., on Behalf of Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir.1998) (applying summary judgment standard to motion for summary adjudication).

[4] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

In a summary judgment motion, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion and identifying" the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968).

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251–52 (1986); Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Id. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting Cities Service, 391 U.S.at 289).

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir.1987).

## ANALYSIS

Defendants move for summary judgment as to each of Plaintiff's following claims: (1) the § 1983 excessive force claim against Cuneo and the Monell-type claim against the County for the shooting; (2) the battery claim against Cuneo and the County (vicariously) for the shooting; (3) the intentional infliction of emotional distress ("IIED") claim against Cuneo and the County (vicariously) for the shooting; (5) the battery claim against Tedford and the County (vicariously) for kicking Plaintiff; (7) the IIED claim against Tedford and the County (vicariously) for the kick; and (8) § 1983 Monell-type claim against the County for the kick. Defendants also move for judgment as to Plaintiff's request for special damages.

Plaintiff does not oppose the Motion as to the Monell claims against the County for the shooting and the kick, the state law claims against Tedford and the County based on the kick, or the special damages. According to Defendants, there is no factual basis on which the County could be held separately liable under federal law for either the shooting or the kicking incidents, and the records bears that out as well. Plaintiff's state law claims against Tedford also fail because he did not include them in his administrative claim, and Plaintiff is not entitled to special damages. Because Defendants' arguments are supported by the record and unopposed, their Motion is GRANTED as to those claims. All that remains for adjudication with respect to this Motion, then, are the questions relevant to the liability of Officer Cuneo and the County for the shooting.

///

///

///

**A. Plaintiff's § 1983 claim against Cuneo**

Plaintiffs First Cause of Action is for excessive force. Defendants have shown they are entitled to judgment as a matter of law on this claim because the undisputed facts demonstrate that Officer Cuneo's use of force was reasonable, and that he is nonetheless entitled to qualified immunity in any event.

**1. Cuneo's use of force was reasonable.**

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989) (internal quotation marks and citations omitted). "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (citations and quotations omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 396-97. "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or

motivation." Id. at 397. Deadly force may only be used when "it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Tennessee v. Garner, 471 U.S. 1, 3 (1985). "At the summary judgment stage, . . . once [the Court] ha[s] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party . . . the reasonableness of [an officer's] actions . . . is a pure question of law." Scott v. Harris, 550 U.S. 372, 381 n.8 (2007).

There is no dispute here that Plaintiff was trying to escape. That alone would not provide justification, however, for Officer Cuneo's use of deadly force. The instant Motion thus turns primarily on whether the undisputed facts show that Officer Cuneo had probable cause to believe that Plaintiff posed a "significant threat of death or serious bodily injury" to Officer Tedford. They do.

Plaintiff does not dispute that he picked up the sledgehammer and was carrying it in his right hand as he launched himself over the counter. Nor does he dispute that Officer Tedford was running in his direction inside the narrow confines of the dark coffee shop to try to apprehend him. The fact that a previously unarmed Plaintiff grabbed a weapon in mid-flight would cause a reasonable officer to believe he intended to use that weapon on his potential captor. Even Plaintiff testified that he was concerned officers would think he intended to harm them if they saw him carrying the hammer.

In opposition, Plaintiff does not dispute the foregoing facts, but instead argues that: (1) when he was holding the sledgehammer, he made no swinging or turning motions toward Officer Tedford; (2) he dropped the sledgehammer before he was hit with the first shot; and (3) Officer Tedford was nowhere near Plaintiff when Plaintiff was shot. The Fourth Amendment does not require Plaintiff to wield a weapon in any particular manner, however, before an officer is entitled to protect a third party. In this case, seeing Plaintiff grabbing the weapon and propelling himself over the counter to where he was bound to crash into Officer Tedford was enough under the circumstances to give Officer Cuneo probable cause to use deadly force to prevent serious bodily injury

to Tedford.[5] In addition, as the surveillance video depicts, it was dark, hard to see and chaotic inside the store. It is undisputed that Plaintiff was armed with the sledgehammer when he was jumping the counter and the hammer was ultimately found on the floor near where Plaintiff landed. Regardless of the split second timing of when Plaintiff was hit and when he released the weapon, it is undisputed that Plaintiff was heading to an inevitable impact with Officer Tedford while he was still brandishing a weapon.

Furthermore, even if Plaintiff had released the sledgehammer prior to being hit, the Fourth Amendment does not require superhuman powers of perception on the part of the responding officer in circumstances like these. A finding that Officer Cuneo should have been able to instantaneously process all implications stemming from the situation in which he found himself (i.e., a dark and confined environment where all of the actors were in nearly constant motion) would require just such superhuman capacity. See Wilkinson v. Torres, 610 F.3d 546, 552 (9th Cir. 2010) (declining to apply a rule on the facts of that case that would "require[] an officer to reevalulate whether a deadly threat has been eliminated after each shot"). Indeed, there is no evidence before the Court in any event to indicate that Officer Cuneo saw Plaintiff drop the sledgehammer before he stopped shooting. See id. at 553 (evidence did not support denial of summary judgment in officer's favor when there was no evidence that officer had immediately perceived that the need for deadly force had passed).

Finally, as to Plaintiff's argument that he was not near enough to Officer Tedford to harm him, while Plaintiff is correct that if specific frames of the surveillance video are viewed in isolation, it appears that Officer Tedford is far enough behind him to be out of range of a swinging sledgehammer, that argument does not account for how fast events actually unfolded. In some frames, Officer Tedford was shown several feet behind Plaintiff. But Officer Cuneo believed his fellow officer had not seen the sledgehammer, and Officer Tedford was still racing forward to intercept Plaintiff. Based on the speed at which all men were actually moving in the video, where even while wounded Plaintiff

[5] There is no dispute that a sixteen pound sledgehammer could cause serious bodily injury.

was able to clear the counter and exit the store in two seconds, Officer Tedford would have covered that distance in no time, putting him directly in harms' way. Indeed, although he slowed at hearing the shots, Officer Tedford was still able to cover that distance to where Plaintiff landed in roughly one second.

Plaintiff's argument also fails to account for the very real possibility that Plaintiff would try to throw the weapon at Officer Tedford. It is plausible that the injuries resulting from being hit with a 16-pound hammer thrown from a short distance could be great, if not greater than, than injuries resulting from being struck directly during the course of hand-to-hand combat. This is precisely why the Supreme Court has eschewed reliance on 20/20 hindsight. The individual frames on which Plaintiff relies cannot do justice to his forward momentum or his seemingly offensive decision to grab the sledgehammer while he was on a collision course with Officer Tedford. Moreover, while the speed of these events as just described goes to the reasonableness of Officer Cuneo's determination that Officer Tedford was at risk for serious physical injury, it is important for another reason as well: it left very little time for Officer Cuneo to react. When Plaintiff grabbed the sledgehammer, Officer Cuneo had less than a second to assess the situation, to choose a course of action, and to act.[6] The law requires officers to make a reasonable choice, and Officer Cuneo did. Plaintiff's version of the facts, "'[w]hile perhaps true as far as it goes, . . . omits the urgency of the situation." Id. at 552.

Indeed, this is a textbook case where an officer was required to make a decision on the spot in circumstances that were nothing if not "tense, uncertain, and rapidly evolving." Graham v. Connor, 490 U.S. at 396-97. It took only two seconds for Plaintiff to grab the sledgehammer, jump the counter, be shot twice, and to nonetheless still

[6] For this reason, although the parties do not argue the point, the Court concludes that no warning would have been practicable. See Gonzalez v. City of Anaheim, 747 F.3d 789, 794 (9th Cir. 2014) (en banc) ("In general, we have recognized that an officer must give a warning before using deadly force whenever practicable.") (citations and quotations omitted). There is conflicting evidence in the record as to whether Officer Cuneo issued a warning prior to pulling the trigger, although Plaintiff concedes that Officer Tedford warned him earlier in the altercation with his gun drawn that if Plaintiff did not show his hands, he would be shot. Any factual dispute is immaterial, however, because even assuming that Officer Tedford's warning was not legally sufficient several seconds later and that Officer Cuneo did not warn Plaintiff at all, on these facts no additional warning would have been feasible, and would probably have been impossible.

escape through the smashed front entrance of the coffee shop. All of this occurred in the middle of the night, in tight, dark quarters, where the officers, like Plaintiff, had little room to maneuver. This is not an instance where officers had the "luxury" of observing a suspect, often under circumstances where that person had committed only a minor crime or no crime at all, from a safe distance over a more extended period of time or where officers had ample time to consider all of their tactical options. See, e.g., Deorle v. Rutherford, 272 F.3d 1272 (2001) (officer not entitled to summary judgment when he shot an emotionally disturbed individual with a bean bag gun after having been on the scene for forty minutes, having five to ten minutes to observe him in close proximity, having the opportunity to consult with other officers on the scene, and there were no exigencies); Espinosa v. City and County of San Francisco, 598 F.3d 528 (2010) (questions of fact precluded summary judgment in favor of officers who shot a man not suspected of any crime and who was trapped in an attic with no apparent weapon and no means of escape); Mattos v. Agarano, 661 F.3d 433 (9th Cir. 2011) (en banc) (reasonable fact finder could conclude force used was unreasonable when a pregnant woman stopped for a traffic violation was tased multiple times even though she was not trying to flee and there were no other exigent circumstance). Those cases were "far from that of a lone police officer suddenly confronted by a dangerous armed felon threatening immediate violence." Deorle, 272 F.3d at 1283. In this case, the severity of Plaintiff's crime, the fact that he was actively trying to evade or resist arrest, and the likelihood that Plaintiff posed an extraordinarily immediate threat to Officer Tedford, who was poised to intercept a sledgehammer-toting Plaintiff at the front of the store within the next one or two seconds, all supported Officer Cuneo's decision to use deadly force to protect his colleague.

With the benefit of hindsight, we now know that Plaintiff apparently did not intend to harm Officer Tedford, and the Court and the parties can review the surveillance videos repeatedly to parse out what actually happened on a frame by frame basis. This sort of armchair-quarterbacking, however, is inappropriate under a proper Fourth Amendment

analysis. The Fourth Amendment requires the Court to stand in the shoes of a reasonable officer on the scene. This makes sense because hindsight is a useful tool only to review what actually occurred. Even in retrospect, the Court cannot predict what would have happened if Officer Cuneo had not shot Plaintiff and Officer Tedford had instead reached Plaintiff and cornered him while he was still armed with his weapon. Certainly, it is possible that the outcome could have been very different. Accordingly, while for purposes of the instant Motion the Court takes Plaintiff at his word that he did not intend to harm the officers, the Fourth Amendment does not require a reasonable officer to make the same assumption on the scene. Our Fourth Amendment requires police officers to make objectively reasonable decisions; it does not require them to do nothing and hope for the best. See Scott, 550 U.S. at 385 ("We think the police need not have taken that chance and hoped for the best."); Billington v. Smith, 292 F.3d 1177 (2002) ("Maybe [the officer] could have hoped that [the decedent who had grabbed the officer's gun and tried to pry it away] simply wanted to disarm him, not shoot him, but that would have been a gamble."). Accordingly, under the undisputed facts before the Court, then, Officer Cuneo's use of force was reasonable and Plaintiff has failed to show a Fourth Amendment violation.

**2. Even if Officer Cuneo had violated Plaintiff's Fourth Amendment rights, he is entitled to qualified immunity.**

Even assuming Plaintiff had shown the violation of a constitutional right, however, Officer Cuneo is nonetheless entitled to qualified immunity unless that right was "clearly established." Pearson v. Callahan, 555 U.S. 223, 232 (2009). "The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Mullenix v. Luna, ___ U.S. ____, 136 S. Ct. 305, 308 (2015) (internal quotation marks and citations omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. (internal quotation marks and citations omitted). "We do

not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al–Kidd, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." Mullenix, 136 S. Ct. at 308 (internal quotation marks and citations omitted).

"[The Supreme Court] ha[s] repeatedly told [lower] courts . . . not to define clearly established law at a high level of generality." Id. (internal quotation marks and citations omitted). "The dispositive question is whether the violative nature of particular conduct is clearly established." Id. (internal quotation marks and citations omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. (internal quotation marks and citations omitted). "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Id. (internal quotation marks and citations omitted).

The parties point to no binding case law, nor has this Court found any, that compels the conclusion that Officer Cuneo violated any clearly established right under the circumstances underlying this case. To the contrary, as set forth above, officers are on notice that they are permitted to use deadly force only when there is probable cause to believe there is an immediate threat of serious bodily injury, which was the case here. Even if Officer Cuneo was mistaken with regard to Plaintiff's intentions, the fact that his assessment of the situation was objectively reasonable makes it impossible for this Court to say that Officer Cuneo was plainly incompetent or knowingly intended to violate the law. Stated another way, the Court is certain that every reasonable official would have understood Officer Cuneo's conduct in protecting another deputy to be permissible under our Constitution. Officer Cuneo is thus entitled to immunity.

///

///

**B. Plaintiff's state claims against Cuneo and the County**

Plaintiff's state law claims against both Officer Cuneo and the County, who Plaintiff alleges is vicariously liable for Cuneo's actions, rise and fall with the Court's finding that Officer Cuneo's conduct was reasonable as a matter of law. See Cal. Penal Code § 835a (officers entitled to privilege for use of reasonable force); Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272 (1998) (unreasonable force required to prove battery claim). Accordingly, Officer Cuneo and the County are entitled to summary judgment as to these causes of action as well.

Furthermore, even if the Court had concluded that Officer Cuneo had violated Plaintiff's constitutional rights, but was nonetheless entitled to qualified immunity because those rights were not clearly established in the particular context of this case, the Court would dismiss these causes of action for lack of jurisdiction. As it stands, the Court had supplemental jurisdiction over the state law claims against Officer Cuneo because they arose out of the same case or controversy as the federal claims against him. 28 U.S.C. § 1367(a). However, since Officer Cuneo is at the very least entitled to immunity on his federal claims, and since the only federal claim thus remaining is against Officer Tedford and challenges his conduct in purportedly kicking Plaintiff when he was injured and lying prone on the ground, that is no longer the case. The state law claims against Officer Cuneo are based on facts entirely separate and apart from the facts supporting an excessive force claim against Officer Tedford for kicking Plaintiff after the fact. Almost none of the evidence at trial would overlap, nor would any issues for adjudication, and any state law issues with regard to the shooting would predominate over the claim against Officer Tedford over which this Court has original jurisdiction. In this instance, it would make more sense for the state courts to adjudicate the questions involving their own state laws. Accordingly, so long as Officer Cuneo is entitled to qualified immunity on his federal claims, there is no longer any reason for this Court to entertain any state claims that might remain and those causes of action would have been dismissed without prejudice. See 28 U.S.C. § 1367(c).

**CONCLUSION**

As set forth above, Defendants' Motion for Summary Judgment (ECF No. 31) is GRANTED. This action shall proceed on Plaintiff's sole remaining claim against Officer Tedford.

IT IS SO ORDERED.

Dated: August 8, 2016

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE